IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS


UNITED STATES OF AMERICA,

          Plaintiff,

vs.                            No. 05-3482-SAC
                                 03-40026-01-SAC

RODOLFO V. ARZATE,

          Defendant.


MEMORANDUM AND ORDER

This case comes before the court on defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, and the government's responsive motion to enforce the defendant's plea agreement.  Defendant contends that his trial counsel was ineffective in failing to timely file a notice of appeal and that his sentence was unconstitutional because the court followed mandatory sentencing guidelines.

**Background**

On May 18, 2004, defendant pleaded guilty to one count of distributing methamphetamine.  On August 18, 2004, this court sentenced

defendant to serve a total of 135 months in custody.  Defendant thereafter filed an untimely pro se notice of appeal to the Tenth Circuit, Dk. 67.  The Tenth Circuit partially remanded that appeal for this court to determine whether defendant made a showing of excusable neglect.  Dk. 75.

Thereafter, defendant's counsel filed a motion to file defendant's appeal out of time, stating that he and defendant had discussed an appeal at the time of sentencing but counsel was unaware of defendant's desire to appeal, and asking that defendant's pro se actions be deemed excusable neglect.  Dk. 77.  This court found that defendant failed to meet the requisite standard, and denied that motion.  Dk. 79.  Accordingly, the Tenth Circuit dismissed defendant's appeal.  Dk. 81.  This § 2255 motion followed, complete with defendant's declaration that he told trial counsel that he wanted to appeal his sentence, but trial counsel refused.  Dk. 83.

**Waiver**

Before reaching the merits of defendant's motion, the court examines whether defendant has waived his right to file this motion under § 2255.  His plea agreement contains a clause, captioned "Waiver of Appeal and Collateral Attack," which provides in relevant part as follows:

Defendant knowingly and voluntarily waives any right to appeal or collateral attack on any matter in connection with this prosecution, and sentence.  The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed.  By entering into this agreement, the defendant knowingly waives any right to an appeal of a sentence imposed which is within the guideline range determined appropriate by the court.  The defendant also waives any right to any challenge to his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255, except to the extent that such a claim is deemed unwaivable under the holding of *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court.  However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal his sentence as authorized by Title 18, U.S.C. § 3742(a).

Dk. 61, p. 13, ¶ 9.

It is appropriate for the court to hold a defendant and the government to the terms of a lawful plea agreement.  *United States v. Arevalo-Jimenez*, 372 F.3d 1204, 1207 (10th Cir. 2004).  The Tenth Circuit has adopted the following analysis for appeals brought after a defendant has entered into an appeal waiver:  (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.  *United States*

3

*v. Hahn*, 359 F.3d 1315 (10th Cir. 2004).  This same approach is appropriately used in this court.

### Scope of waiver

Basic contract principles apply in determining whether the appeal falls within the scope of the waiver.  *Hahn*, 359 F.3d at 1324-25. Appeal waivers are strictly construed and any ambiguities in such agreements are to be read against the government and in favor of a defendant's appellate rights.  *Hahn*, 359 F.3d at 1325.

The language in defendant's plea agreement is clear and unambiguous.  It repeatedly waives a "collateral attack," and expressly includes § 2255 motions in the waiver in stating:  "The defendant also waives any right to any challenge to his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255..."  Neither the exception to nor the release from the waiver stated in the plea agreement applies, as neither an upward departure[1] nor a governmental appeal has occurred. Nor does the language of the waiver reserve the right to appeal or collaterally attack based on a subsequent change in the law.

_____

[1]  Defendant's 135-month sentence on Count 1 was with the guideline range for that count, which was 135 to 168 months. (Dk. 66, p. 1).

4

Defendant's waiver expressly included § 2255 motions "except to the extent that such a claim is deemed unwaivable  under the holding of *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)."  Dk. 61, p. 13.  *Cockerham* held that a claim of ineffective assistance of counsel brought pursuant to § 2255 survives such a waiver where it challenges the validity of the plea or the waiver.  The underlying rationale is that it would be "altogether inconceivable to hold such a waiver enforceable when it would deprive a defendant of the "opportunity to assert his Sixth Amendment right to counsel where he had accepted the waiver in reliance on delinquent representation." *Cockerham*,  237 F.3d 1179, 1184 (10th Cir. 2001), quoting  *Jones v. United States*, 167 F.3d at 1142, 1144-45(7th Cir. 1999).

Defendant's motion and initial brief do not argue that his attorney was ineffective in negotiating his plea agreement or the waiver. Instead, the sole ineffective assistance claim is that his attorney was constitutionally deficient in failing to file a notice of appeal.  This contention does not relate to the negotiation of the plea agreement or the waiver of appellate rights; therefore, it falls within the scope of the waiver.  *See United States v. Thomas,* 49 Fed.  Appx. 781, 784, 2002 WL 31323474, *3

(10th Cir. 2002).

In his reply brief, defendant contends for the first time that his attorney told him the waiver provision was "essentially meaningless," that it was a mere formality, and that he could petition the court for a change of his sentence if anything in the law changed.  Defendant adds that if he had been told that the waiver was 100% binding, he would have asked his lawyer to "renegotiate his plea agreement."  Dk. 88.

Although such statements could be construed as alleging that his counsel was ineffective in the negotiation of the waiver itself, courts do not ordinarily consider arguments raised for the first time in a reply brief.  *See e.g.,United States v. Stults*, 137 Fed. Appx. 179, 182 (10th Cir. 2005); *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).  To do so would unduly prejudice the respondent.  As this court has previously ruled:

> ... a court in a § 2255 proceeding does not consider arguments presented for the first time in a reply brief.  *See United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir.2002) (citing *Codner v. United States*, 17 F.3d 1331, 1332 n. 2 (10th Cir.1994)), *cert. denied*, 123 S. Ct. 388 (U.S. Oct. 15, 2002).

*United States v. Walters*, 2002 WL 31929249, *11 (D. Kan. 2002).  Having failed to raise the issue of the waiver negotiation in his initial motion and memorandum, defendant is barred from raising it in his reply.  *See United*

States v. Brazier, No. 97-3186-SAC, 1997 WL 833293, at *1 n. 3 (D. Kan. Dec. 11, 1997) (denying new arguments presented by section 2255 movant in reply brief), aff'd, 149 F.3d 1191 (10th Cir. June 9, 1998); Wagher v. Guy's Foods, Inc., 765 F. Supp. 667, 671 (D. Kan.1991) ("In pursuit of fairness and proper notice, this court's practice is to deny or exclude summarily all arguments and issues first raised in reply briefs.").

### Knowing and voluntary waiver

Defendant additionally contends that his waiver was not knowing and voluntary.  When determining whether a waiver of appellate rights is knowing and voluntary, the court examines the language of the plea agreement, United States v. Elliott, 264 F.3d 1171, 1174 n. 1 (10th Cir. 2001), and the plea colloquy. United States v. Chavez-Salais, 337 F.3d 1170, 1173 (10th Cir. 2003).  See Hahn, 359 F.3d at 1325.  Defendant has the burden to present evidence from the record establishing that he did not understand the waiver.  Hahn, 359 F.3d at 1329, citing United States v. Edgar, 348 F.3d 867, 872- 73 (10th Cir. 2003).

Defendant's plea agreement states that defendant "knowingly and voluntarily waives any right to any appeal or collateral attack on any matter in connection with this prosecution and sentence." Dk. 61, p. 4-5, ¶

9.  Defendant represented that he had read the plea agreement and understood it, in stating:  "Further, the defendant acknowledges that he has read the plea agreement, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion."  *Id.* at ¶14.  He expressly admitted that his plea was knowing and voluntary in stating:  "The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily."  *Id.*

The transcript of the plea colloquy additionally confirms that defendant's plea was knowing and voluntary.  In response to the court's questions, the defendant stated that he was not under treatment for any physical or mental problem, was not under the influence of drugs or alcohol, had had an opportunity to fully discuss the charges with his attorney, and was satisfied with the services of his attorney.  Dk. 85, p.8. Defendant entered a plea of guilty to the charge in open court, stated no one had made any threats or promises outside the plea agreement, and said that no one was forcing him to enter his plea.  *Id.*, p. 13. The defendant stated he was entering the guilty plea because he was guilty of the charge.  *Id.*, p. 13.

This court made a thorough inquiry into whether the plea agreement was entered into knowingly and voluntarily.  Although the court did not directly address the appellate rights waiver provision in the plea agreement, the Tenth Circuit "has repeatedly held that a court's failure to directly address the appellate waiver provision does not negate that provision, so long as the record is clear that the waiver was entered into knowingly and voluntarily.  *See United States v. Black*, 201 F.3d 1296, 1301-02 (10th Cir. 2000)."  *Moore v. United States*, 37 Fed. Appx. 374, 375 -376 (10th Cir. 2002).

By virtue of the language in the plea agreement and the court's colloquy with defendant, the court was assured at the time of the plea that defendant's waiver was freely, voluntarily and intelligently made.  *Id*., p. 33. The court reaffirms that finding today.

Further, the  record as a whole supports the conclusion that defendant's waiver was knowing and voluntary.  Defendant testified at his recent evidentiary hearing that he had read his plea agreement and understood that it contained a waiver of his right to appeal.  He additionally admitted that he was not confused by the plea language stating, "Defendant knowingly and voluntarily waives any right to appeal or

collateral attack on any matter in connection with this prosecution and sentence."  Defendant conceded that he understood the language stating, "defendant knowingly waives any right to an appeal of a sentence imposed which is within the guideline range determined appropriate by the Court."

Nonetheless, defendant testified that from what his trial counsel had explained to him at his sentencing, defendant still thought he had the right to appeal.  This conclusory testimony lacks credibility and is insufficient to meet defendant's burden to show that he did not enter the plea agreement knowingly or voluntarily.

> Petitioner cannot now credibly argue the opposite of what he swore to in his earlier statements and testimony before the Court. *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir.1988) (A defendant's statements at a plea hearing should be regarded as conclusive as to the truth and accuracy in the absence of a believable valid reason justifying departure from the apparent truth of those statements).

*Guerrero v. United States*, 2005 WL 1279193, *2 (D. Kan. 2005).  Here, as in Guerrero, the defendant has not met his burden to show that he did not enter the plea agreement knowingly or voluntarily.

### Miscarriage of justice

The court also examines whether enforcement of the waiver would result in a miscarriage of justice.  Enforcement of an appellate

waiver results in a miscarriage of justice when: "(1) the district court relied on an impermissible factor such as race, (2) where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, (3) where the sentence exceeds the statutory maximum, or (4) where the waiver is otherwise unlawful."  *Hahn*, 359 F.3d at 1327 (citations omitted).

The court is not alleged to have relied, and did not rely, upon defendant's color, race, or other impermissible factor.  No claim of ineffective assistance of counsel in connection with the negotiation of the waiver is before the court.  Nor is the third factor met, as defendant's sentence does not exceed the statutory maximum of 20 years.  *See*  Dk. 61, ¶ 1; 21 U.S.C. 841(b)(1)(C).

The court thus examines whether defendant has shown that his waiver is "otherwise unlawful."  To satisfy this "demanding standard," *United States v. Cardenas*, 139 Fed. Appx. 58, 2005 WL 1538964 (10th Cir. June 30, 2005), the alleged error must "seriously affect the fairness, integrity or public reputation of judicial proceedings .. . ." as that test was employed in *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993)."  *Hahn,* 359 F.3d at 1327 (internal citation and

11

quotation marks omitted). "The burden rests with the defendant to demonstrate that the appeal waiver results in a miscarriage of justice." *United States v. Anderson*, 374 F.3d 955, 959 (10th Cir. 2004).

Broadly construed, defendant's petition alleges that a miscarriage of justice would occur if he is not able to pursue his constitutional due process claim, and if his trial counsel was ineffective in failing to directly appeal his case. This latter claim shall be separately addressed below.

### Mandatory sentencing guidelines

Defendant's contention that his right to due process was violated when he was sentenced under mandatory United States Sentencing Guidelines, *see* Dk. 82, p. 4, relies upon the decision in *United States v. Booker*, 543 U.S. 220 (2005), which held that the Guidelines are advisory, and not mandatory. Defendant's chief complaint is that the court did not specifically discuss or apply the § 3553(a) factors, some of which may have warranted a shorter sentence. Defendant does not specify which such factors he believes may have produced that result.

Defendant was sentenced approximately five months before *Booker* was decided, but raised no *Blakely* challenge. At the time of

defendant's sentence, this court anticipated *Booker's* ruling on the unconstitutionality of the Guidelines and imposed upon defendant an alternative sentence that assumed the Guidelines were not mandatory. That alternative sentence was the same as the 135-month sentence the defendant received in the event the Guidelines were mandatory. *See* Dk. 65, p. 2.

The Tenth Circuit has recently reviewed this very language and upheld this court's practice of alternative sentencing. *United States v. Cornelio-Pena*, 435 F.3d 1279, 1289 (10th Cir. 2006). It held that the court need not explicitly examine each of the § 3553(a) factors so long as the court consults the Guidelines and the Presentence Investigation Report. *See United States v. Kelley*, 359 F.3d 1302, 1305 (10th Cir. 2004) (holding that "the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence." This court need not 'recite any magic words' to demonstrate that it has fulfilled its responsibility. *Id.* at 1305 (internal quotation omitted). *See United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005) (noting that the district court is not required to "march through § 3553(a)'s sentencing factors" before its sentence will be upheld).

13

The Tenth Circuit will not remand for resentencing if it determines, "without undue speculation, that the district court would have imposed the same sentence on remand."  *United States v. Corchado*, 427 F.3d 815, 821 (10th Cir. 2005).  *See United States v. Roberts*, 2006 WL 205318, *5 (10th Cir. 2006); *United States v. Contreras-Martinez*, 409 F.3d 1236, 1240 -1242 (10th Cir. 2005) (holding no reversal of sentences *post-Booker* if they can be determined from the record to have been reasoned and reasonable.)

Defendant's claim that a miscarriage of justice occurred because of the mandatory nature of the Guidelines is meritless.  This court consulted the Guidelines then adopted some of the findings in the PSR and rejected others, analyzing several of the factors set forth in 18 U.S.C. § 3553(a).  Specifically, the court gave the defendant credit for acceptance of responsibility, despite the PSR's recommendation not to do so, evidencing consideration of defendant's "history and characteristics."  28 U.S.C. § 3553(a)(1).  The court additionally eliminated a firearm enhancement which was included in the PSR, showing its consideration of the "nature and circumstances of the offense."  *Id.*  The court ordered defendant to participate in an approved program for substance abuse and to abstain

14

from the use of alcohol during said treatment program, evidencing its

consideration of the need for the sentence imposed "to provide the

defendant with needed ... medical care or other correctional treatment in

the most effective manner." 28 U.S.C. § 3553(a)(2)(D). The PSR

recommended a guideline range of 235 to 240 months. Instead, because

the court considered the § 3553(a) factors set forth above, among others,

the court found the guideline range to be 135 to 168 months. The court

additionally unambiguously explained exactly what it would do if the

Guidelines were found unconstitutional.

Tenth Circuit cases discussing the enforceability of similar

waivers "make clear that the fact that a defendant's claim on appeal is

constitutional in nature does not place it beyond the reach of a knowing

and voluntary waiver." *United States v. Jefferson*, 63 Fed. Appx. 439, 443

(10th Cir. 2003). In sum, this record reveals no error in sentencing

defendant that seriously affected the fairness, integrity or public reputation

of the judicial proceedings, and no evidence that a miscarriage of justice

occurred. *See United States v. Porter*, 405 F.3d 1136 (10th Cir. 2005).

### Failure to file notice of appeal

The court next examines defendant's claim that his trial counsel

was constitutionally deficient in failing to file a notice of appeal.  The Tenth Circuit recently confirmed that when counsel ignores a criminal defendant's request to appeal, defendant is entitled to a delayed appeal even if it appears the appeal is meritless.  *United States v. Garrett*, 402 F.3d 1262, 1266-1267 (10th Cir. 2005).  This holding follows the Supreme Court's "bright line" rule that a lawyer who fails to follow a defendant's express instructions to file a notice of appeal acts in a manner that is professionally unreasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 477-78 (2000).

The right to a direct appeal under these circumstances appears to exist despite a plea agreement's waiver of all appeals.  *See United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005)(holding a waiver of collateral review will not be enforced when a defendant was deprived of the opportunity for direct appeal because defense counsel rendered ineffective assistance by ignoring a defendant's request to perfect an appeal); *see also Campusano v. United States*, 442 F.3d 770 (2d Cir. Mar. 23, 2006); *United States v.Wales*,  2006 WL 950655, *2 (10th Cir. 2006).

In determining whether a defendant has instructed his counsel to file a notice of appeal, the court considers all the circumstances of the case, and its scrutiny of counsel's performance is highly deferential.  As the United States Supreme Court has noted,

16

"[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel." *Id.,* at 688-689, 104 S. Ct. 2052.  Rather, courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *id.*, at 690, 104 S. Ct. 2052, and "[j]udicial scrutiny of counsel's performance must be highly deferential," *id.*, at 689, 104 S. Ct. 2052.

*Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), quoting *Strickland v. Washington*, 466 U.S. 668 (1984).

It is well established that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.  *Id.*  But when the defendant has not clearly conveyed his wishes one way or the other, "the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking ... whether counsel in fact consulted with the defendant about an appeal."  *Id.* at 478.  The term "consult" means "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id.*  If counsel has consulted with the defendant, "counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal."  *Id.*

If counsel has not consulted with the defendant, the court must

17

ask whether counsel's failure to consult with the defendant itself constitutes

deficient performance. *Id.*, at 478.

> ...counsel has a constitutionally imposed duty to consult with the
> defendant about an appeal when there is reason to think either (1)
> that a rational defendant would want to appeal (for example, because
> there are nonfrivolous grounds for appeal), or (2) that this particular
> defendant reasonably demonstrated to counsel that he was
> interested in appealing. In making this determination, courts must
> take into account all the information counsel knew or should have
> known.  *See id.*, at 690, 104 S. Ct. 2052 (focusing on the totality of
> the circumstances).  Although not determinative, a highly relevant
> factor in this inquiry will be whether the conviction follows a trial or a
> guilty plea, both because a guilty plea reduces the scope of
> potentially appealable issues and because such a plea may indicate
> that the defendant seeks an end to judicial proceedings.  Even in
> cases when the defendant pleads guilty, the court must consider
> such factors as whether the defendant received the sentence
> bargained for as part of the plea and whether the plea expressly
> reserved or waived some or all appeal rights.

*Roe*, 528 U.S. at 480.

### First evidentiary hearing

Aware that an evidentiary hearing is ordinarily required when

the parties present conflicting evidence regarding whether a defendant

asked his attorney to file a notice of appeal, s*ee Garrett*, 402 F.3d at

1266-1267 (10th Cir. 2005); *United States v. Palermo*, 175 Fed. Appx. 244

(10th Cir. 2006), the court set an evidentiary hearing for August 2, 2006,

limited to that issue.  The morning of the hearing, joint proposed findings

and conclusions of the government and defendant were filed which

stipulated that defendant's trial counsel was ineffective in failing to timely
file a notice of appeal.  Specifically, the joint proposed findings stated that
defendant desired to appeal, that defendant told his counsel at sentencing
that he wished to appeal, that counsel did not adequately consult with
defendant about whether a notice of appeal would or should be filed after
the sentencing, and that counsel's failure to timely file a Notice of Appeal
for defendant fell below the standard of reasonableness required by the
Sixth Amendment.  Dk. 96.[2]

      Upon reviewing the proposed findings, the court was concerned
that they directly contradicted trial counsel's prior representations on the
same issue to this court, did not reflect any consultation whatsoever with
trial counsel, and did not reflect any factual basis for the stipulations.  Trial
counsel had previously represented to this court:

> Defendant did not contact counsel, but rather filed an appeal
> pro se.  Defense counsel and defendant discussed an appeal at
> defendant's sentencing.  However, defense counsel was made aware
> that defendant wanted (sic) appeal only when defense counsel
> received defendant's pro se appeal.

Dk. 77.

      Accordingly, when the evidentiary hearing began and no

---

[2]This was consistent with defendant's declaration filed in support of
this motion.  *See* Dk. 83, p. 7.

witnesses were present, the court stated that it was not willing to accept the parties' proposed findings and conclusions or to proceed with an evidentiary hearing unless trial counsel were present and testified, or the parties represented that they had conferred with trial counsel about the proposed findings.  Because neither of these contingencies was satisfied, the court continued the matter until October 17, 2006 for an evidentiary hearing at which time trial counsel could be present.

### Second evidentiary hearing

On October 17, 2006, upon questioning by the court, counsel for the government stated that his earlier agreement to the joint proposed findings had been in error, that a factual finding by the court was necessary, and that the government "had no position" on the issue.  The court then heard the testimony of defendant, defendant's trial counsel, and defendant's father, and took the motion under advisement.[3]  The parties were permitted to file supplemental briefs, and defendant has done so. Having heard the evidence and reviewed the relevant pleadings, the court is ready to rule.

---

[3]The hearing was continued until October 24, 2006 to permit defendant's counsel to review documents which trial counsel had not earlier produced.

Defendant testified that at his sentencing, he spoke with his trial counsel about an appeal.  He asked trial counsel, "can we appeal," and trial counsel replied, "Yes."  On cross examination defendant testified that he asked trial counsel, "What about an appeal?" and trial counsel replied, "Don't worry.  We're going to appeal this."  Defendant wanted to appeal because he thought he would be sentenced to 120 months instead of 135 months.  He believed that he made it clear to his counsel that he was interested in an appeal.  This conversation was brief, immediately before the marshals escorted defendant out of the courtroom and back to prison.

Defendant expected trial counsel to contact him about the appeal process within ten days after sentencing, but during that ten-day period, his trial counsel initiated no contact whatsoever with him. Defendant attempted to call his trial counsel collect from CCA but his call would not go through and was blocked completely.  He asked his mother and father to call trial counsel, and understood that they did so, leaving messages that were never returned.  Defendant finally bought a telephone card and spoke to trial counsel within the ten day period.  Defendant asked whether trial counsel was going to "come up and talk about filing an appeal."  Trial counsel responded, "What do you want to appeal?" and defendant replied that he wanted to appeal his sentence.  To this trial

21

counsel initially responded that his job was done, then stated that he could appeal but would need more money.  This conversation lasted five to ten minutes.

On cross examination, defendant admitted that the court had advised him at sentencing that he had ten days to appeal, that the clerk would immediately file a notice of appeal for him if he so desired, and that he had the right to apply for in forma pauperis status.  Defendant further admitted that he had never specifically asked trial counsel to file a notice of appeal on his behalf.  Nonetheless, based on their conversations, defendant expected trial counsel to do so.

Defendant admitted that he had read the plea agreement including the language therein which waives his right to appeal his sentence, had signed that agreement, and acknowledged that he had read it.  He testified that even after waiving appeal in the plea agreement he thought he would have an appeal because from the beginning his trial counsel had told him he was looking at 120 months on the sentence, so when he got sentenced to 135 he felt he wanted to appeal that.
Other testimony clarified that despite the language in his plea agreement which generally waived his right to appeal, defendant thought he had the right to appeal because of what his trial counsel had explained to him.

Trial counsel's testimony contradicted that of the defendant in crucial part.  He testified that he discussed an appeal extensively and at length with defendant before he entered his plea, after defendant plead, and immediately after defendant was sentenced.  After defendant was sentenced, trial counsel told defendant while in the courtroom that defendant had a right to appeal and that counsel was required to perfect an appeal for defendant if he so requested.  He may have told defendant that he would seek to be released as the appeal progressed due to a conflict of interest.  This conversation lasted less than five minutes.  Trial counsel told defendant that defendant would need to notify him if he wanted to appeal.

Trial counsel further testified that defendant never told trial counsel that he did or did not want to appeal, did not express any interest in an appeal, and did not have any questions whatsoever about an appeal. During the ten day period, trial counsel heard nothing from defendant or his family about an appeal.  He had no knowledge that defendant wanted to appeal until he received defendant's pro se notice of appeal.  He was retained for the district court proceedings, and understood that that included the duty to perfect an appeal if defendant so requested.  Trial counsel does not do a lot of appellate work in the Tenth Circuit and was not a member of the Tenth Circuit bar at the time he represented this

23

defendant.

Defendant's father testified that he told trial counsel shortly after the  sentencing that his son wanted to appeal his sentence.  He did not state what response he received or offer any other details about this conversation.

To the extent a factual conflict exists on the controlling questions, the court finds trial counsel's credibility to be greater than defendant's and his father's.  The testimony of defendant's father is so general and undeveloped as to be unpersuasive.   Although trial counsel failed to recall blocking his telephone eight years ago,[4] and does not keep accurate records of his contacts with his clients, the court credits his testimony that he never intentionally blocked any calls from this defendant and did not consider defendant to be a nuisance,[5] as well as his testimony about his conversations with defendant regarding an appeal.  Defendant's attempt to attack trial counsel's credibility and effectiveness by showing trial counsel's pattern of carelessness on other occasions is not well taken.

Based upon the testimony above, coupled with the court's

---

[4]*See United States v. Stewart*, 51 F. Supp. 2d 1147, 1157 (D. Kan. 1999).

[5]*See* Rosel affidavit, filed Nov. 3, 2006.

observation of the witnesses and findings on credibility, the court finds that the defendant did not specifically instruct trial counsel to file a notice of appeal, and failed to clearly convey his wishes one way or the other.  As defendant admitted and as trial counsel confirmed, defendant never expressly asked trial counsel to file a notice of appeal on his behalf.  The facts of record fail to show that trial counsel performed in a professionally unreasonable manner by failing to follow the defendant's express instructions with respect to an appeal.

The court further finds that trial counsel consulted with defendant about an appeal.  He discussed an appeal extensively and at length with defendant not only before he entered his plea, but also after defendant plead, as well as immediately after defendant was sentenced. After defendant was sentenced, trial counsel told defendant that he had a right to appeal, that he needed to appeal if at all within ten days, that counsel had a duty to perfect the appeal for him, and that defendant needed to contact counsel within ten days if he decided to appeal. Defendant failed to so do, and trial counsel had no reason to believe that defendant desired to appeal until he received a copy of defendant's pro se notice of appeal.

The record does support a finding that trial counsel explained to

25

defendant the advantages and disadvantages of taking an appeal, however.  Accordingly and alternatively, in the event the court errs in finding that trial counsel adequately consulted with defendant, the court examines whether counsel's failure to consult with the defendant to this extent constitutes deficient performance.  The facts known to defense counsel--that defendant pleaded guilty, received the sentence bargained for, and waived all appeal rights --reasonably suggested to counsel that a rational defendant would not want to appeal, and more specifically that this defendant was not interested in appealing his conviction or sentence.  Thus even if counsel failed to consult with the defendant, no deficient performance has been shown.  Counsel was therefore not constitutionally deficient in failing to file a notice of appeal.

Because defendant's § 2255 motion falls within the scope of defendant's knowing and voluntary waiver, and enforcing the waiver would not result in a miscarriage of justice, the court enforces defendant's waiver of his right to collateral review.

IT IS THEREFORE ORDERED that defendant's motion to vacate his sentence under 28 U.S.C. § 2255 (Dk. 82) is denied and that the government's motion to enforce the plea agreement (Dk. 86) is granted.

Dated this 28th day of November, 2006, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge